HELTON *et ux.*

*v.*

JOHNSON *et ux.*

(*Supreme Court of Appeals of Virginia, July 1, 1897.*)

[27 S. E. Rep. 579.]

**Specific Performance—Parol Contracts to Convey Land—Insufficiency of Evidence.**

A parol contract for the sale of land will not be enforced where the only evidence of the contract consists of testimony of declarations made by the vendor, in none of which is he said to have made any reference to the contract relied on, and it does not appear whether the act proved in part performance was done before or after the alleged making of the contract, nor that a refusal of full execution of the contract, if it exist, would operate as a fraud on the parties, and place them in a situation which does not lie in compensation.

Appeal from circuit court, Russell county.

Bill by James S. Helton and wife against P. L. Johnson and wife. From a decree for defendants, complainants appeal. Affirmed.

*E. S. Finney,* for appellants.

*Wm. E. Burns,* for appellees.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Russell county dismissing appellants' bill, filed for the purpose of setting aside a deed of conveyance from John Johnson, Sr.,

to P. L. Johnson and his wife, of a tract of 77 acres of land, lying in Russell county, and to specifically enforce against the heirs of John Johnson, Sr., who had died, a parol contract alleged to have been made by him in his lifetime with appellants, for the sale of the tract of 77 acres of land to them.

The bill alleges that appellants, J. S. Helton and wife, the latter being a daughter of John Johnson, Sr., had made with the latter in his lifetime two verbal contracts concerning the tract of land in question. The first is said to have been made in 1879, whereby it was agreed that if appellants, who were living about 20 miles from Johnson, in Russell county, would move to his home upon this tract of land, and support and maintain him during his life, they (appellants) should have absolute control and possession of the land and the income therefrom during Johnson's life, and at his death one-third of the farm in fee simple, the remaining two-thirds to go at Johnson's death to his two infant sons, James B. and Balfour Johnson, who were to stay on the farm, and work with appellants. The second is claimed to have been made after appellants had moved to the farm, improved, cultivated, and managed it for several years, and after the two sons of Johnson, James B. and Balfour, had left or abandoned the farm, whereby appellants were to build a more comfortable dwelling house, and continue to support and maintain the elder Johnson, and improve, fence up, and clear out the farm, so that it would furnish them a more bountiful support, Johnson agreeing that appellants should have the fee simple to the whole farm.

After alleging that appellants had fully performed these contracts on their part, involving an outlay in labor and money of not less than from six to eight hundred dollars, the bill charges that P. L. Johnson, the son of John Johnson, Sr., and Jane Johnson, wife of P. L. Johnson, who live within one mile of appellants, and well knowing of the contract between them and John Johnson, Sr., and of the faithful performance of the

contract by the appellants, fraudulently induced, persuaded, and enticed John Johnson, Sr., in the last days of his life, and about two or three months before his death, in 1892, to leave his home with appellants, and go to theirs, and that, by reason of his being very old, childish, and infirm, persuaded him only a few weeks before his death to make to them (P. L. Johnson and wife) a deed of conveyance for the tract of 77 acres of land.

The deed thus attacked was made by John Johnson, Sr., on the 6th of April, 1892, conveying to P. L. Johnson and his wife the tract of land in question, the consideration set out for the conveyance being natural love and affection that the grantor had for his son P. L. Johnson and Sarah J., his wife, and the sum of $300 in hand paid by the grantees to the grantor, the receipt of which is acknowledged, and it was recorded April 9, 1892.

There is not a scintilla of proof adduced by the appellants to sustain the charges of fraud in the procurement by P. L. Johnson and wife of this deed (which are denied by the answer of P. L. Johnson and wife), or to disprove that the money was paid by P. L. Johnson to the grantor, as acknowledged in the deed ; and the proof to establish the verbal contracts, alleged in the bill to have been entered into by John Johnson, Sr., with the appellants, falls very far short of that required to warrant the enforcement of a parol contract for the sale of land. It is vague and indefinite, consisting only of statements of witnesses as to certain declarations made by John Johnson, Sr., in his lifetime, in none of which is he said to have made any reference to the contract relied on, from which even an inference could be drawn that he recognized that he had made the contract with appellants that they seek to enforce. In none of these statements said to have been made by the elder Johnson does he refer to the building of the house by the appellants, upon which they rely as the consideration for the contract whereby they were to have the whole of the tract of land in fee simple. It is shown that appellants did build or remodel

the dwelling on the farm, and erected some outbuildings ; but it does not appear whether or not these buildings were put up before or after the two sons James and Balfour left the farm ; nor is it shown that appellants made any outlay for the support and maintenance of the elder Johnson beyond the purchase for him "on one occasion of a pair of pants." They did not pay the taxes on the land, nor any of the expenses in keeping the farming implements in order, or in shoeing the team used on the farm, all of which is proven to have been paid by Johnson himself. Instead of being proved, as alleged, that the appellant James S. Helton was engaged in a lucrative business, and was in comfortable circumstances when Johnson, Sr., induced him to enter into the first contract alleged, the proof is that he was living on rented land, and without personal property other than his household goods, and perhaps one cow, while John Johnson, Sr., had sufficient stock and farming implements and other personal property by the use of which Helton was enabled to cultivate the land, and thereby make for himself and family a far better support than he had ever made for them before. One of appellants' own witnesses testified that he (witness) wrote three wills for John Johnson, Sr., while Helton and his family were living with him ; that by the first he willed his land to Mrs. Helton and his two infant sons ; by the second, written some five or six years before his death, he willed the farm equally to Mrs. Helton and his son Balfour Johnson ; and by a third to Mrs. Helton and her children,—all of which wills the testator afterwards destroyed, or, at least, they have not been found.

It was said by this court in Wright v. Pucket, 22 Grat. 374, that the grounds upon which parol agreements for the sale of land will be enforced are as follows : "First, the parol agreement relied on must be certain and definite in its terms ; second, the acts proved in part performance must refer to, result from, and be made in pursuance of, the agreement made ; third, the agreement must have been so far executed that a refusal of full exe-

cution would operate a fraud upon the parties, and place them in a situation which does not lie in compensation."

The principles enunciated in that case have been so frequently repeated by this court that they are now recognized as the settled law of the state, and as controlling cases of the character now before us; and enough has been said of the evidence relied on to show that it wholly fails in this case to entitle the appellants to the enforcement of their alleged contract.

There is no error in the decree appealed from, and it is therefore affirmed.